JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Eric Gold and Ferne Gold

**DEFENDANTS**

State Farm Fire and Casualty Company

**(b)** County of Residence of First Listed Plaintiff   Montgomery County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   McLean, IL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bradley J. Vance, Esquire
Reger Rizzo & Darnall LLP - Cera Centre, 13th Floor, 2929 Arch Street,
Philadelphia, PA  19104

Attorneys *(If Known)*
Yolanda Konopacka DeSipio, Esquire, 960 Harvest Drive, Building B,
Suite 100, Blue Bell, PA 19422; (267) 654-1116

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☒ 2  U.S. Government
       Defendant

☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
       Proceeding

☒ 2 Removed from
       State Court

☐ 3 Remanded from
       Appellate Court

☐ 4 Reinstated or
       Reopened

☐ 5 Transferred from
       Another District
       *(specify)*

☐ 6 Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332, 1441 & 1446

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/15/2015

SIGNATURE OF ATTORNEY OF RECORD
*Yolanda Konopacka DeSipio*

FOR OFFICE USE ONLY

RECEIPT #　　　　AMOUNT　　　　APPLYING IFP　　　　JUDGE　　　　MAG. JUDGE

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  505 Ironwood Way, Dresher, PA  19025-1411

Address of Defendant: State Farm Fire and Casualty Company, One State Farm Plaza, Bloomington, IL  61701-0001

Place of Accident, Incident or Transaction:  505 Ironwood Way, Dresher, PA 19025-1411      Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)          Yes ☐  No X   O        O

Does this case involve multidistrict litigation possibilities?                                             Yes ☐  No X

RELATED CASE, IF ANY:

Case Number: _____Judge _____Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                            Yes ☐  No X        O

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
   action in this court?                                                                     Yes ☐  No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
   terminated action in this court?                                                          Yes ☐  No X        O        O

Civil: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:                                              B. Diversity Jurisdiction Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts       1. X Insurance Contract and Other Contracts

2. ☐ FELA                                                               2. ☐ Airplane Personal Injury

3. ☐ Jones Act-Personal Injury                                         3. ☐ Assault, Defamation

4. ☐ Antitrust                                                         4. ☐ Marine Personal Injury

5. ☐ Patent                                                           5. ☐ Motor Vehicle Personal Injury

6. ☐ Labor-Management Relations                                        6. ☐ Other Personal Injury (Please specify)

7. ☐ Civil Rights                                                     7. ☐ Products Liability

8. ☐ Habeas Corpus                                                    8. ☐ Products Liability — Asbestos

9. ☐ Securities Act(s) Cases                                          9. ☐ All other Diversity Cases

10. ☐ Social Security Review Cases                                         (Please specify) _____

11. ☐ All other Federal Question Cases
     (Please specify) _____

## ARBITRATION CERTIFICATION
### (Check Appropriate Category)

I,_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____      _____      _____
                                    Attorney-at-Law                       Attorney I.D.#
       NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court
except as noted above.

DATE:  04/15/2015      _____      _____62170_____
                                  Attorney-at-Law                         Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Eric Gold and Ferne Gold  : CIVIL ACTION
         :
    v.     : NO. 15 -
         :
State Farm Fire and Casualty Company :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( X )

| 04/15/2015 | Yolanda Konopacka DeSipio | Defendant |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-654-1116 | 267-654-1122 | desipio@bbs-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC GOLD and FERNE GOLD | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | NO. 15- |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE | : | |
| COMPANY, and STATE FARM FIRE | : | |
| AND CASUALTY INSURANCE | : | |
| COMPANY | : | |

## NOTICE OF REMOVAL OF CIVIL ACTION
## FROM STATE COURT

AND NOW, comes Defendant, State Farm Fire and Casualty Company ("State Farm"), for the purpose only of removing this case to the United States District Court for the Eastern District of Pennsylvania and respectfully avers as follows:

1.      This is a civil action filed and now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, March Term, 2015, Number 00614.

2.      Said action was commenced on March 3, 2015 via Writ of Summons. The Summons was served on State Farm by certified mail only on March 5, 2015.

3.      Plaintiffs' Complaint was filed on March 18, 2015.  A true and correct copy of Plaintiffs' Complaint is attached hereto, made a part hereof and marked as Exhibit "1."

4.      On April 8, 2015, Plaintiffs filed an Amended Complaint amending only paragraph 87 of the original Complaint.  A true and correct copy of Plaintiffs' Amended Complaint and Stipulation (April 2, 2015) are attached and marked as Exhibit "2."

4.      The averments made herein are true and correct with respect to the date and time upon which suit was commenced and the date upon which this notice is being filed.

5.      This suit is of a civil nature and involves a controversy between citizens of different states.  Plaintiffs are a citizens of the Commonwealth of Pennsylvania.  Defendant, State Farm, is now, and was at the time Plaintiff commenced this action and filed her Complaint, a corporation organized under the laws of the State of Illinois and with its principal place of business at One State Farm Plaza, Bloomington, Illinois.

6.      Defendant State Farm has simultaneously with the filing of this notice, given written notice to Plaintiffs.

7.      Defendant State Farm is also filing a copy of the instant notice of removal and all attachments thereto with the Prothonotary of the Court of Common Pleas of Philadelphia County.

8.      The Complaint asserts three (3) counts against Defendant State Farm: Count I for breach of contract; Count II - statutory bad faith pursuant to 42 Pa.C.S.A. § 8371; and Count III- violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  *See* Exhibit "1."

9.      The amount in controversy in the Complaint is listed in each of the three (3) Counts is in excess of $50,000.  *See* Exhibit "1," Wherefore clauses following each Count.

10.      According to the Complaint, Plaintiffs allege they suffered substantial property damages to their house as a result of Hurricane Sandy on October 29, 2012, and again as a result of a fire on March 19, 2013.  Plaintiffs alleges that State Farm has breached the insurance policy in its handling of both claims.  According to Paragraphs 50 and 53 of the Complaint, Plaintiffs allege that as of January 26, 2015, State Farm estimated their property damages to the dwelling as a result of the fire to be $913,237,71 on a replacement cost basis ("RCV"), but alleges that State Farm has to date paid only $428,121.82 on an actual cash value basis (ACV).  In paragraph 61 of the Complaint, Plaintiffs allege that State Farm has estimated their dwelling damages as a result of Hurricane Sandy

at $104,844.16, but Plaintiffs do not specifically allege how much they claim is still due and owing on the dwelling claim due to Hurricane Sandy.

11.      In addition to their dwelling damages as a result of both the fire and Hurricane Sandy, Plaintiffs allege that they also suffered losses to their personal property and have incurred additional living expenses, but do not specifically allege the amount(s) they still claim under those coverages with respect to each loss. See Exhibit "1" - Complaint at ¶25-27, and 81.

12.      Based on the foregoing, the Complaint indicates that the amount in controversy on the fire dwelling claim alone is $485,115.89.

13.      In Count II - Bad Faith, pursuant to 42 Pa. C.S.A. § 8371, Plaintiffs seek an amount in excess of $50,000.00, including compensatory damages, interest upon the amount of the contract claim against State Farm, punitive damages, attorney's fees, and costs.

14.      In Count III- Violations of the UTPCPL and PA Unfair Insurance Practices Act, Plaintiffs seek an amount in excess of $50,000.00, including treble damages, attorney's fees, interest, and costs.

15.      Based on the foregoing, Defendant State Farm seeks to remove this matter to the United States District Court for the Eastern District of Pennsylvania as the amount in controversy in this matter exceeds $75,000. As the moving party, defendant bears the burden of proving that jurisdiction is proper in federal court. Russ vs. State Farm Mut. Auto. Ins. Co., 961 F.Supp. 808, 810 (E.D. Pa. 1997).

16.      In determining whether the jurisdiction amount has been satisfied, the Court must first look at the Complaint. Angus vs. Shiley, Inc., 989 F.2d 142, 145 (3rd Circ. 1993).

17.      Based on the allegations in the Complaint, Plaintiffs have alleged that the amount in controversy on the breach of contract claim alone is in excess of $485,115.89.   Therefore, the

amount in controversy for the breach of contract claim alone far exceeds the sum of $75,000 exclusive of interest and costs.

18.     With reference to Plaintiffs' bad faith claim pursuant to 42 Pa. C.S.A.§ 8371, Plaintiffs seeks attorney's fees. Attorney's fees must also be included in determining the amount in controversy. Neff vs. General Motors Corp., 163 F.R.D. 478, 482 (E.D. Pa. 1995). It would not be unreasonable to expect that over the course of an approximate six month litigation, counsel could incur costs and fees in an amount approaching $10,000.

19.     In addition, Plaintiffs also seeks punitive damages pursuant to 42 Pa. C.S.A. §8371. Whether both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. Bell vs. Preferred Life Assurance Soc'y, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943).

20.     In the event Plaintiffs are able to sustain a finding of bad faith, although the propriety of same is disputed by Defendant State Farm, it would not be unreasonable to expect that a punitive damage award of one or two times the amount in controversy could be rendered by the trier of fact.

21.     Based on the foregoing, the amount in controversy on the claims alleged in Plaintiffs' Complaint far exceeds the sum of $75,000 exclusive of interest and costs and, accordingly, Defendant State Farm respectfully removes this matter to Federal Court.

22.     Upon removal of this matter, defendant demands a jury of 12.

WHEREFORE, Defendant, State Farm Fire and Casualty Company, hereby removes this suit to this Honorable Court pursuant to the laws of the United States in such cases made and provided.

By: _____
**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**Attorney for Defendants**
**Attorney ID No: 62170**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1116**

## AFFIDAVIT

I, Yolanda Konopacka DeSipio, Esquire, being duly sworn according to law, do hereby depose and state that I am the attorney for Defendant, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Insurance Company, the Petitioner in the foregoing Notice of Removal, that I have been duly authorized by the Petitioner to execute this Affidavit, that I am familiar with the facts involved in this matter, and that the allegations set forth in the foregoing Notice of Removal are true and correct to the best of my knowledge, information and belief.

_____
YOLANDA KONOPACKA DESIPIO, ESQUIRE

DATE: __04/15/15__

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC GOLD and FERNE GOLD | : **CIVIL ACTION** |
| | : |
| v. | : |
| | : NO. 15- |
| STATE FARM MUTUAL | : |
| AUTOMOBILE INSURANCE | : |
| COMPANY, and STATE FARM FIRE | : |
| AND CASUALTY INSURANCE | : |
| COMPANY | : |

## NOTICE OF REMOVAL

**TO:**   Bradley J. Vance, Esquire
Reger, Rizzo & Darnell LLP
Cira Center, 13th Floor
2929 Arch Street
Philadelphia, PA  19104

PLEASE TAKE NOTICE that defendant, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, has filed in this Court a verified Notice for Removal of the State Court action, <u>Gold v. State Farm</u>, now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, March Term 2015, docket number 00614.

PLEASE TAKE FURTHER NOTICE that a certified copy of the Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIC GOLD and FERNED GOLD | : **CIVIL ACTION** |
| | : |
| v. | : NO. 15- |
| | : |
| STATE FARM MUTUAL | : |
| AUTOMOBILE INSURANCE | : |
| COMPANY, and STATE FARM FIRE | : |
| AND CASUALTY INSURANCE | : |
| COMPANY | : |

### DEFENDANT'S CERTIFICATION OF FILING OF
### COPY OF NOTICE OF REMOVAL WITH STATE COURT

Yolanda Konopacka DeSipio, Esquire, being duly sworn according to law, deposes and says that she is an attorney with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company.

That she did direct the filing with the Prothonotary of the Court of Common Pleas of Philadelphia County a copy of the Notice of Removal, attached hereto, said filing to be made on April 15, 2015.

BY: _____
**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**Attorney for Defendant**
**Attorney ID No: 62170**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1116**

Sworn to and subscribed
before me this 15th day
of April, 2015.

_____
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DeANN S. ALLEVA, Notary Public
Whitpain Twp., Montgomery County
My Commission Expires February 27, 2018

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC GOLD and FERNED GOLD | : **CIVIL ACTION** |
| | : |
| v. | : NO. 15- |
| | : |
| STATE FARM MUTUAL | : |
| AUTOMOBILE INSURANCE | : |
| COMPANY, and STATE FARM FIRE | : |
| AND CASUALTY INSURANCE | : |
| COMPANY | : |

### CERTIFICATE OF SERVICE

Yolanda Konopacka DeSipio, being duly sworn according to law, deposes and says that she is an attorney with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Insurance Company, and that she did serve this 15th day of April, 2015, the aforementioned notice to plaintiffs upon the individual named below by depositing a copy of same in the United States Post Office box, postage prepaid, enclosed in an envelope plainly addressed to: *Bradley J. Vance, Esquire, Reger, Rizzo & Darnell LLP, Cira Center, 13th Floor, 2929 Arch Street, Philadelphia, PA 19104.*

BY: _____
**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**Attorney for Defendant**
**Attorney ID No: 62170**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1116**

Sworn to and subscribed
before me this 15th day
of April, 2015.

_____
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DeANN S. ALLEVA, Notary Public
Whitpain Twp., Montgomery County
My Commission Expires February 27, 2018

# EXHIBIT "1"

# FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## COURT OF COMMON PLEAS OF PHILADELPHIA

*Filed and Attested by
PROTHONOTARY
18 MAR 2015 12:45 pm
A. STAMATO*

ERIC GOLD AND FERNE GOLD

V.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE AND CAUSALTY COMPANY

COURT OF COMMON PLEAS

PHILADELPHIA COUNTY
MARCH TERM, 2015
NO 00614

## NOTICE TO DEFEND

### NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania  19107
(215) 238-6333
TTY (215) 451-6197**

### AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio.  Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania  19107
(215) 238-6333
TTY (215) 451-6197**

10-284

**REGER RIZZO & DARNALL LLP**
Bradley J. Vance, Esquire     Attorney for the Plaintiffs
Attorney ID No.58850
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA  19104
(215) 495-6500

---

| | | |
|---|---|---|
| ERIC GOLD AND FERNE GOLD, h/w | : | COURT OF COMMON PLEAS |
| 505 Ironwood Way | : | |
| Dresher, PA 19015 | : | |
|     Plaintiffs | : | PHILADELPHIA COUNTY |
| | : | |
|    v. | : | MARCH TERM, 2015 |
| | : | NO.  00614 |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE | : | |
| COMPANY, and STATE FARM FIRE | : | |
| AND CASUALTY COMPANY | : | |
| 1 State Farm Plaza | : | |
| Bloomington, Illinois 61710 | : | |
|     Defendants | : | |

## PLAINTIFFS' CIVIL ACTION COMPLAINT

### Breach of Contract, Bad Faith, Violation of Unfair Trade Practices and Consumer Protection Law

1.  Plaintiffs are husband and wife residing at all materials times at the above-captioned address.

2.  Defendant State Farm Mutual Automobile Insurance Company is an insurance company, corporation or other entity which at all material times issued a policy of homeowners insurance and/or was the corporate owner or parent of an insurance company or other entity which issued a  policy of homeowners insurance to Plaintiffs insuring the residence and items of personal property owned by the Plaintiffs.  A true and accurate copy of the Declarations Page for the policy of homeowners insurance is

attached hereto as Exhibit "A". At all times material hereto, Defendants conducted business in the Commonwealth of Pennsylvania and specifically within the County of Philadelphia of a systematic and continuing nature, including but not limited to issuance of insurance policies to residents of Philadelphia County, charging and collecting hundreds of millions of dollars from Philadelphia residents for premium payments, advertising for business from Philadelphia residents, and other sales and business activities, all to Defendants' great financial benefit.

3.      Defendant State Farm Fire and Casualty Company is an insurance company, corporation or other entity which at all material times issued a policy of homeowners insurance to Plaintiffs insuring the residence and items of personal property owned by the Plaintiffs. A true and accurate copy of the Declarations Page for the policy of homeowners insurance is attached hereto as Exhibit "A". At all times material hereto, Defendants conducted business in the Commonwealth of Pennsylvania and specifically within the County of Philadelphia of a systematic and continuing nature, including but not limited to issuance of insurance policies to residents of Philadelphia County, charging and collecting hundreds of millions of dollars from Philadelphia residents for premium payments, advertising for business from Philadelphia residents, and other sales and business activities, all to Defendants' great financial benefit.

4.      On March 19, 2013, Plaintiffs were named insureds and/or insureds on the policy of homeowners insurance issued by the Defendants, which policy provided insurance to Plaintiffs  for, *inter alia*, the dwelling listed above, personal property of the Plaintiffs, and loss of use, in addition to additional coverages.

5.      At all material times including but not limited to October 29, 2012 and March 19, 2013 to the present, Defendants owed certain contractual duties and obligations to Plaintiffs regarding the insurance coverages contained in the Plaintiffs' homeowners policy.

6.      At all materials times including but not limited to October 29, 2012 and March 19, 2013 to the present, Defendants owed a duty of good faith and fair dealing to the Plaintiffs in handling insurance claims made under Plaintiffs' homeowners policy.

7.      For many years leading up to March 19, 2013 and from that date to the present, Defendants advertised to the general public that they would and do, among other things, handle claims by their insureds in a fair, timely and reasonable fashion as an inducement to have people, including the Plaintiffs, purchase insurance products from State Farm such as Plaintiffs' homeowners policy.

8.      On or about March 19, 2013, when Plaintiffs were insured by Defendants under the homeowners policy, Plaintiffs' residence/dwelling and personal property sustained serious and extensive damage resulting from a fire at the insured location.

9.      Plaintiffs gave immediate notice of the loss to Defendants, specifically by contacting State Farm and/or its agent on March 19, 2013 to notify Defendants of the fire and resultant losses and damages.

10.     Plaintiffs fully complied with Section I – CONDITIONS, Section 2 a. of the homeowners policy.

11.     Defendants dispatched Serv Pro, an emergency services or other company or entity, to the insured location to board up various windows in the residence.

Case ID: 150300614

12.     At all times relevant and material hereto, Plaintiffs' homeowners policy contained coverage for "Additional Living Expense" under Coverage C, LOSS OF USE.

13.     Defendants delayed substantially in relocating or assisting the Plaintiffs in relocating to temporary living accommodations after the fire, resulting in various serious and permanent injuries and damages to the Plaintiffs.

14.     Defendants hired, retained or engaged its preferred vendor, ServiceMaster of Bux/mont, to estimate the cost to replace or repair the damages to the insured location that resulted from the fire.

15.     Prior to March 19, 2013, and from that date to the present, Defendants have had a long-standing business relationship with ServiceMaster of Bux/mont.  Upon information and belief, ServiceMaster of Bux/mont was part of Defendant's State Farm Premier Program.

16.     At the specific recommendation and request of Defendants, Plaintiffs agreed to allow ServiceMaster to provide a repair or replacement estimate and perform necessary repairs to the insured location that resulted from the fire and Hurricane Sandy.  Plaintiffs specifically relied upon the advice and recommendations given by Defendants in agreeing to ServiceMaster, and in reliance on Defendants' advice and recommendations, elected not to hire other contractors.

17.     During its investigation of the damage from the fire event, Defendants uncovered and found evidence of substantial damage to Plaintiffs' residence and certain items of personal property resulting from Hurricane Sandy, which occurred on October 29, 2012.

18.     Defendants determined that the damage to Plaintiffs' residence and personal property caused by Hurricane Sandy was substantial, and was separate and distinct from

the substantial damages to Plaintiffs' residence and personal property caused by the March 19, 2013 fire event.

19.     Defendants investigated the fire event and Hurricane Sandy as two separate claims events, each having its own separate coverage amounts for damage to dwelling, damage to personal property and for Loss or Use or Additional Living Expenses under the homeowners policy.

20.     Defendants set up separate and distinct claims for the damage to Plaintiffs' residence and personal property caused by the fire event and Hurricane Sandy.

21.     Both the fire event and Hurricane Sandy trigger and implicate separate, full policy limits under the homeowners policy of insurance.

22.     Both the fire event and Hurricane Sandy are covered perils and losses under the homeowners policy of insurance issued by Defendants to Plaintiffs.

23.     As the direct and factual result of the fire event, Plaintiffs' insured residence sustained significant structural damage including, but specifically not limited to, destruction of the cabana and sunroom necessitating complete demolition and reconstruction, as well as other direct damage and smoke damage throughout the entire home.

24.     As the direct and factual result of Hurricane Sandy, Plaintiffs' insured residence sustained significant structural damage including, but specifically not limited to, destruction of rooms, walls, foundation, improvements and other structural items necessitating complete demolition and reconstruction, as well as other direct damage throughout the entire home.

Case ID: 150300614

25.     As the direct and factual result of the fire event and as a direct and factual result of Hurricane Sandy, Plaintiffs' personal property sustained significant direct and smoke or water damage, necessitating replacement and/or cleaning of a significant number of items of personal property.

26.     As a direct and factual result of the fire and/or Hurricane Sandy, Plaintiffs' insured residence was rendered uninhabitable from March 19, 2013, to the present.

27.     As a direct and factual result of the fire and/or Hurricane Sandy, Plaintiffs required relocation to alternative living accommodations from March 19, 2013, to the present.

28.     At all times relevant and material hereto, the locations to which Plaintiffs were relocated by Defendants or otherwise did not approximate or provide Plaintiffs with their customary standard of living.

29.     Due to dilapidated and other conditions that made certain of the accommodations to which Plaintiffs were relocated uninhabitable, Plaintiffs were required to relocate on multiple occasions.

30.     As of February 2014, almost one year after the initial fire event and Defendants identifying damage from Hurricane Sandy, Defendants themselves, or by and through Service Master or other agents of Defendants had failed to complete the investigation of the damages to Plaintiffs' insured residence, including but not limited to failure to provide a written estimate of the damages to Plaintiffs' insured residence.

31.     Defendants' investigation of Plaintiffs' damages to their residence and personal property was not completed by March 19, 2014, and to this date is not complete in that,

*inter alia*, Defendants have never provided final estimates to Plaintiffs for damage to the residence or personal property damages in the fire event and Hurricane Sandy.

32.     The March 19, 2013 fire and Hurricane Sandy causing damage to Plaintiffs' insured residence and personal property was an accidental direct physical loss.

33.     The Fire and Hurricane Sandy are and were at all times relevant and material hereto  insured perils under the homeowners policy issued by Defendants to Plaintiffs.

34.     An initial estimate for the repair and/or replacement costs for damage to Plaintiffs' insured residence was not completed until April, 2014, more than one year after the fire event.

35.     Defendants, through their employee claims adjuster and/or claims supervisor, prepared a second estimate for the repair or replacement costs for Plaintiffs' residence.

36.     Defendants delayed until September, 2014, a time of nearly one and one-half years after the date of the fire event, to provide Plaintiffs with State Farm's estimate for the damages to Plaintiff's residence.

37.     Defendants have never provided Plaintiffs with a reasonable explanation, or any explanation, for the delay in providing State Farm's estimates for the damage to Plaintiffs' insured residence.

38.     Defendants have never completed final estimates for the damage to Plaintiffs' residence caused by the fire and Hurricane Sandy, nor have Defendants ever provided a reasonable explanation to Plaintiffs for failing to provide final and complete estimates.

39.     Defendants' initial estimate for the damages to Plaintiffs' insured residence was for a total cost or amount that was approximately $100,000 greater than the preliminary estimate provided by Defendant's agent, Service Master.

40.     Because of the complete incompetence of Service Master, the contractor recommended to Plaintiffs by Defendants, Plaintiffs were forced to obtain and retain a new construction contractor.  This was delayed by Defendants' failure to complete and produce the estimate for damages for Plaintiffs' insured residence until September of 2014.

41.     The repair estimate for damage to Plaintiffs' residence caused by the fire produced by Defendants in September, 2014, was for a replacement cost value of $810,729.56.   Thereafter, in October of 2014, Defendants through their employee claims adjuster or claims managers, prepared and provided Plaintiffs with a revised estimate for the damages to Plaintiffs' insured residence, which estimate was inexplicably for an amount that was approximately $55,000 lower than Defendants' initial estimate provided in September 2014.

42.     Defendants never provided any explanation to Plaintiffs for why the revised estimate was written or for why the revised estimate was for an amount less than the original estimate prepared by Defendants.  Defendants have, in fact, never explained either estimate for the repair of damage to the residence from the fire to Plaintiffs.

43.     Upon information and belief, Defendants revised the estimate for the damages to Plaintiffs' insured residence for the sole purpose of reducing the amount of the Plaintiffs' claims, for the sole financial interests of the Defendants.  Through this action, Defendants placed State Farm's own financial interests ahead of those of its isureds, Plaintiffs herein.

44.     Subsequently, Defendants' employee claims adjuster reversed the adjustment that resulted in an estimate that was approximately $55,000 lower than Defendants' original

estimate, again without providing any explanation for either revised estimate and reduction, or the subsequent reversal of the reduction to Plaintiffs.

45.     As of November, 2014, Defendants had failed and refused to pay the Plaintiffs the entire amount required to repair and replace the portions of Plaintiffs' insured dwelling damaged by the fire event and Hurricane Sandy.

46.     Defendants produced to Plaintiffs a fourth estimate for the cost to repair or replace structural damages caused by the fire dated December 3, 2014.  This repair estimate was for a replacement cost value of $866,071.17.   Once again, the change in the amount of this estimate was not explained or justified in any way to the Plaintiffs.

47.     Defendants then prepared yet another estimate for the structural damages from the fire, this time in the amount of $913,237.71.  Once again, the change in the amount of this estimate was not explained or justified in any way to the Plaintiffs.

48.     Despite preparing estimates for structural damage to the Plaintiffs' residence resulting from the fire in amounts ranging between $755,070.63 and $913,237.71, to date Defendants have made payments for the fire damage and claim totaling only $428,121.82.  Defendants have never explained or provided a reason for this to the Plaintiffs.

49.     On or about February 13, 2015, Defendants provided a payment to Plaintiffs for structural damages caused by the fire in the amount of $142,897.62, bringing the total payments made for fire damage to the residence to $428,121.82.  The letter enclosing the payment was dated January 23, 2015, thus evidencing that Defendants delayed in making the payment by three weeks.

Case ID: 150300614

50.     Upon information and belief, Defendants based the above payment on yet another estimate, this estimate bearing a print date of January 26, 2015. This estimate was for an actual cash value total of $428,121.82.

51.     Consistent with its prior handling and mishandling of Plaintiffs' fire damage claims, and all prior iterations of the damage estimate for the structure, Defendants failed to offer any explanation of any kind as to why and on what basis the damage estimate for structural damages from the fire was reduced by approximately $480,000 from the estimate for precisely the same event and structural damage prepared on December 5, 2014.

52.     Upon information and belief, the reduction in the repair estimate set forth above was done solely and purely for the financial benefit of the Defendants, thereby further evidencing Defendants continued and systematic placement of its own financial interests ahead of those of its insureds, Plaintiffs herein.

53.     Despite having estimated the cost to repair and replace structural damages to Plaintiffs' residence from the fire event at $913,237.71, Defendants have to date paid only $428,121.28 to Plaintiffs.

54.     Plaintiffs are completely and entirely unable to hire competent construction contractors to commence rebuilding their home from the damage caused by the fire and Hurricane Sandy with the monies provided by Defendants. This, among other actions by the Defendants, has caused and continued to cause Plaintiffs to be displaced from their home for now approaching a period of two years. Defendants' actions have also caused Plaintiffs' residence to remain in an uninhabitable, unrepaired state, exposed to the

elements, thus causing additional damage to the home and to built-in furnishings in the home.

55.     To date, Defendants have failed and refused to provide Plaintiffs with any reasonable explanation for Defendants' refusal to pay the amount required to repair and replace the damaged portions of Plaintiffs' insured dwelling.

56.     On or about December 11, 2014, Defendants made a payment to Plaintiffs for damage to their insured residence caused by Hurricane Sandy in the amount of $104,844.16.

57.     The "estimate" upon which the above payment was based was generated under the name "ServiceMaster of Bux-Mont", and bears the name "Matt Jandzio".  The estimate bears a date of April 1, 2014.

58.     Matt Jandzio had been terminated by ServiceMaster of Bux-Mont long before April 1, 2014.

59.     Defendants fraudulently misrepresented to Plaintiffs that the estimate upon which it based its payment of December 11, 2014 was prepared by Matt Jandzio and ServieMaster of Bux-Mont, with the purpose of inducing Plaintiffs to rely upon the estimate and in reliance on this estimate settle the claim with Defendants for damage to their residence caused by Hurricane Sandy.

60.     In providing a payment to Plaintiffs for structural damages caused by Hurricane Sandy together with the estimate bearing the names Matt Jandzio and Bux-Mont, Defendants made false and misleading statements and misrepresented facts relating to the investigation of the claim for damages from Hurricane Sandy.

61.     Although the estimate on which the payment of $104,844.16 was based was completed on or before April 1, 2014, the payment was not made to Plaintiffs until December 11, 2014.  No explanation has ever been provided to Plaintiffs for the delay in over seven (7) months in making this payment.  Seven (7) months is an entirely unreasonable period of time to make a payment for settlement or partial settlement of a claim.

62.     To date, Defendants have failed and refused to pay the costs to repair or replace Plaintiffs' personal property damaged in the fire event and Hurricane Sandy.

63.     To date, Defendants have failed and refused to provide Plaintiffs with any reasonable explanation for Defendants' refusal to pay the costs to repair or replace Plaintiffs' personal property damaged in the fire event and Hurricane Sandy.

64.     To date, Defendants have failed and refused to conduct a complete and reasonable investigation of the damages to Plaintiffs' insured premises and personal property, without providing Plaintiffs with any reasonable explanation for their failure to do so.

65.     Defendants have repeatedly placed their own financial interests ahead of the financial interests of the Plaintiffs as relate to the fire loss and losses from Hurricane Sandy and Plaintiffs' resultant claims for damage to their insured residence and personal property.

66.     Defendants lack any reasonable basis or justification for refusing and failing to make payments to Plaintiffs under the homeowners policy for damage to Plaintiffs' insured residence and personal property that resulted from the fire event and/or from Hurricane Sandy.

67.     Defendants' actions through its employees and agents in handling and failing to properly handle Plaintiffs' claims have caused Plaintiffs to suffer significant undue financial burdens, anxiety, emotional and physical distress, in addition to denying Plaintiffs the right and ability to enjoy the comforts of their home and personal property, all without reasonable justification, bases and explanation to Plaintiffs.

68.     As the direct and factual result of the acts and omissions of Defendants in, *inter alia*, failing to adequately and reasonably investigate Plaintiffs' covered claims and failure and refusal to pay the amounts required to repair or replace damaged portions of Plaintiffs' insured residence and personal property, Plaintiffs have suffered and continue to suffer additional and increasing financial and other damages and losses, including but not limited to additional damages to the structure of the insured premises, additional damages to personal property items, and additional costs in attempting to protect the residence and store the personal property, all to Plaintiffs' great and continuing financial detriment.

69.     On January 14, 2015, Defendants through their employee claims adjuster requested a fourth inspection of Plaintiffs' insured residence for purposes of rewriting, again, the Defendant's estimate to repair or replace the damaged portions of the insured residence.

70.     Defendants' repeated actions in writing and rewriting repair estimates, and retaining various experts to estimate and address the damages to Plaintiffs' insured premises have caused Defendants to delay and set aside investigation and estimation of the damages to Plaintiffs' personal property caused by the fire event and Hurricane Sandy.

71.     Defendants' repeated actions in writing and rewriting repair estimates, and retaining various experts to estimate and address the damages to Plaintiffs' insured premises have caused Plaintiffs to rely upon Defendants' assurances that the Plaintiffs' claims would ultimately be settled as required in the homeowners policy, and to previously forego commencing action against Defendants.

72.     Defendants have never asserted that they would deny or reduce Plaintiffs' claims if settlement was not accomplished within one year from the fire event or from Hurricane Sandy.

73.     Defendants had not completed the repair estimates for the insured residence or personal property damaged in the fire by the date one year after the fire event.

74.     Defendants have never advised Plaintiffs that any of the claims to damaged portions of the insured residence or personal property were excluded or otherwise limted under any provision of the homeowners policy.

75.     By letter dated April 21, 2014, more than one year after the fire event, Defendant provided an explanation of coverages under Plaintiffs' homeowners policy, for the very first time after the fire.  This letter provides, in part, "No action shall be brought unless there has been compliance with the policy provisions.  The action must be started within one year after the date of loss or damage."  This is the very first writing to Plaintiffs stating this provision.  This letter establishes that Defendants waited over one year from the date of loss (the fire) to advise Plaintiffs that they must commence actions against Defendants for fire-related damages within one year from the date of loss.  The provision has never been explained to Plaintiffs by Defendants.  Defendants have waived the

provision and are estopped from asserting a contractual limitations period for commencing the within action.

76.     Plaintiffs were led by the actions and statements of Defendants' employees and agents to believe that the provision stated in the April 21, 2014 letter would not be applied by Defendants to restrict or eliminate any claim Plaintiffs have to payment under the homeowners policy for damaged portions of the insured residence or personal property as the result of the fire event and Hurricane Sandy.

COUNT I
BREACH OF CONTRACT
PLAINTIFFS VS. DEFENDANTS

77.     Plaintiffs incorporate herein by reference thereto the averments and allegations contained in paragraphs 1 through 76, inclusive, as though same were set forth at length.

78.     The homeowners policy of insurance issued by Defendants to Plaintiffs is a binding contract which creates duties and obligations owed by Defendants to Plaintiffs for claims made under the policy.

79.     Plaintiffs have fully complied with each and every duty or obligation owed by Plaintiffs under the terms of the insurance contract.

80.     Defendants have failed to comply with various duties and obligations owed by Defendants to Plaintiffs under the contract of insurance.

81.     Defendants' failure to comply with their obligations under the contract of insurance include, but are not limited to, failure to make reasonable and necessary payments to Plaintiffs under Coverage A and Coverage B, failure to comply with the provisions of Coverage C Loss of Use, failure to investigate Plaintiffs' claims fully,

reasonably and in a timely fashion, and failure to provide written estimates for the repair and replacement of damaged portions of Plaintiffs' insured residence and Plaintiffs' personal property.

82.     Defendants have breached the contract of insurance with Plaintiffs, all of which breaches are of a significant, material and ongoing nature.

83.     As a direct, proximate, factual and legal result of the Defendants' breaches of the insurance contract, Plaintiffs have suffered and continue to suffer significant damages and harm, for all of which claim is made herein.

84.     As a direct, proximate, factual and legal result of the Defendants' breaches of the insurance contract, Plaintiffs have suffered and continue to suffer significant damages, including but not limited to inability to replace and repair damaged portions of their home resulting in their inability to live in their home for over two years, loss of personal property and use of personal property, inability to repair or replace damages personal property, significant out of pocket expenses incurred in having to attempt to repair damaged portions of their home with their own money, physical and emotional distress caused by being displaced from their home for over two years and failure of Defendants to reasonably investigate their claims and explain the handling of the claim or insurance coverages.

WHEREFORE, Plaintiffs Eric and Ferne Gold demand judgment in their favor and against Defendants in an amount in excess of $50,000, plus interest, costs of suit and any and all further remedies as the Court deems adequate and just.

COUNT II
BAD FAITH
PLAINTIFFS VS. DEFENDANTS

85.     Plaintiffs incorporate herein by reference thereto the averments and allegations

contained in paragraphs 1 through 84, inclusive, as though same were set forth at length.

86.     At all times relevant and material hereto, Defendants owed a duty of good faith to

Plaintiffs in investigating and handling their claims under the homeowners policy.

87.     Defendants' conduct through its employees and agents in relation to Plaintiffs'

damages and claims resulting from the fire event consisted, *inter alia*, of the following:

(a)     misrepresenting provisions and coverages in the homeowners policy,
including but not limited to Coverage A, Coverage B and Coverage C, and the limitations
of action provisions;

(b)     failing to act timely in responding to Plaintiffs' inquiries and concerns
relating to their claims, and the Defendants' investigation of their claims;

(c)     failing to promptly, sufficiently and reasonably investigate Plaintiffs'
claims and damage to their insured premises and personal property, and failure and
refusal to explain this to the Plaintiffs;

(d)     failing and refusing to fully pay Plaintiffs' claims without fully
investigating the claims and without explaining this to the Plaintiffs;

(e)     failing to acknowledge and act in a timely and reasonable manner in
response to communications from and on behalf of the Plaintiffs relating to Plaintiffs'
claims;

(f)     refusing and failing to pay Plaintiffs' claims as the result of failing to
properly, fully and adequately investigate the claims;

(g)     failing to fully pay Plaintiffs' claims despite acknowledging the claims
and that all claims were covered under the homeowners policy;

(h)     failing to effectuate and attempt to effectuate a good faith resolution of
Plaintiffs' claims;

(i)    Failing to act in good faith towards the Plaintiffs in attempting to resolve Plaintiffs' claims;

(j)    Attempting to settle Plaintiffs' claims at and for amounts that no reasonable person would consider proper and sufficient compensation for Plaintiffs' damages;

(k)    Attempting to settle Plaintiffs' claims without adequate support or justification for the amounts offered to settle the claims;

(l)    Causing substantial and ongoing delay in settling and compensating Plaintiffs' for the damages sustained as the result of the fire event and Hurricane Sandy;

(m)    Causing Plaintiffs to institute litigation through their delay and failure to investigate Plaintiffs' claims;

(n)    Failing to provide full and sufficient written explanation of payments made as partial payment to Plaintiffs for claims resulting from the fire event;

(o)    Failing to provide written updates and explanation to Plaintiffs of the status of the claims and Defendants' investigation of the claims;

(p)    Failing to provide any explanation for Defendants' insufficient and incomplete investigation of Plaintiffs' claims under the terms and coverages contained in the homeowners policy; and

(q)    Acting to deceive the Plaintiffs or otherwise acting deceptively toward the Plaintiffs in handling and attempting to settle portions of the Plaintiffs' claims.

88.    At all times relevant and material hereto Defendants, in their course of dealings with Plaintiffs and investigation and handling of Plaintiffs' claims, placed Defendants' own financial interests ahead of those of the Plaintiffs.

89.    At all times relevant and material hereto Defendants, in their course of dealings with Plaintiffs and investigation and handling of Plaintiffs' claims, breached the duty of good faith and fair dealing Defendants owed to Plaintiffs.

90.    The Plaintiffs' instant Complaint states and concerns an action under a policy of insurance.

Case ID: 150300614

91.     Defendants' actions in handling, investigating, failing to investigate, failing to communicate, failing to make reasonable settlement offers and other conduct stated herein constitutes bad faith conduct to their insureds, Plaintiffs herein;

92.     Plaintiffs acted in justifiable reliance on the statements and actions of the Defendants in not commencing litigation prior to the date this Complaint was filed.

93.     Plaintiffs are entitled to recover interest on the amount of the claim, punitive damages, costs and attorney's fees and specifically make claim for all herein, pursuant to the provisions of 42 Pa.C.S.A. §8371.

WHEREFORE, Plaintiffs Eric and Ferne Gold demand judgment in their favor and against Defendants in an amount in excess of $50,000, plus interest, costs of suit, punitive damages, attorney's fees and any and all further remedies as the Court deems adequate and just.

COUNT III
VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW
PLAINTIFFS VS. DEFENDANTS

94.     Plaintiffs incorporate herein by reference thereto the averments and allegations contained in paragraphs 1 through 93, inclusive, as though same were set forth at length.

95.     Defendants' actions as identified herein constitute violations of a systematic and ongoing nature of one or more of the provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1. et seq.

96.     Specifically, through their investigation of, course of handling and adjustment of Plaintiffs' claims, Defendants have engaged in unfair or deceptive trade practices and acts, as defined under the provisions of 73 P.S. §201-2, which provides in pertinent part, as follows:

"UNFAIR METHODS OF COMPETITION" and "UNFAIR OR DECEPTIVE ACTS OR PRACTICES" mean any one or more of the following:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

97.     Defendant's claim handling and conduct related to the investigation and handling of Plaintiffs' claims for damage to their insured residence and personl property caused by the fire and Hurricane Sandy events amount to the unfair and deceptive acts set forth above.

98.     Defendants' conduct and violations of the provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law have caused harm and damages to Plaintiffs as alleged herein, entitling Plaintiffs to all remedies and damages under the Act, including but not limited to treble damages and counsel fees, for all of which claim is made herein.

WHEREFORE, Plaintiffs Eric and Ferne Gold demand judgment in their favor and against Defendants in an amount in excess of $50,000, plus interest, costs of suit, treble damages and attorney's fees, and any and all further remedies as the Court deems adequate and just.


REGER RIZZO & DARNALL LLP

Date: **3·18·15**                By: _____
                                     Bradley J. Vance, Esquire
                                     PA ID No. 58950
                                     Cira Centre, 13th Floor
                                     2929 Arch Street
                                     Philadelphia, PA  19104
                                     (215) 495-6500
                                     Attorney for Defendant,

## V E R I F I C A T I O N

    Plaintiff verifies that the statements made in this pleading are true and correct to the best of plaintiff's knowledge, information and belief. To the extent that the pleading contains averments of law and language of counsel and results of investigation, plaintiff has relied on counsel.

    Plaintiff understands that the statements therein are made subject to the penalties of 18 Pa.C.S.A. Section §4904 relating to unsworn falsification to authorities.

Date: 3/17/15             By: _____

                               Eric Gold

# EXHIBIT "A"

Case ID: 150300614

**State Farm** State Farm Fire and Casualty Company
100 State Farm Place
Ballston Spa, NY 12020-8000

## RENEWAL CERTIFICATE

| POLICY NUMBER | 78-BM-Q758-5 |
|---|---|

Homeowners Policy
JUN 04 2014 to JUN 04 2015

E-13- 6121-FBAE     H  W   F

001842 0001
GOLD, ERIC & FERNE
505 IRONWOOD WAY
DRESHER PA  19025-1411



**SEE BALANCE DUE FOR RENEWAL OFFER**

BILLED THROUGH SFPP

### Coverages and Limits

**Section I**
| | | | |
|---|---|---|---|
| A | Dwelling | | $868,900 |
| | Dwelling Extension | Up To | 86,890 |
| B | Personal Property | | 651,675 |
| C | Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**
All Losses 1/2%                                4,344

**Section II**
| | | |
|---|---|---|
| L | Personal Liability | $300,000 |
| | Damage to Property of Others | 500 |
| M | Medical Payments to Others | 1,000 |
| | (Each Person) | |

Location:  Same as Mailing Address

SFPP No: 1074575413

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**
| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $173,780 | OPT  ID |
| Ordinance/Law  10%/ $86,890 | OPT  OL |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Homeowners Policy Endorsement | FE-3518 |

**Annual Premium**                             $2,086.0

**Premium Reductions**
| | |
|---|---|
| Home Alert Discount | 207.0 |
| Home/Auto Discount | 1,116.0 |
| Claim Record Discount | 519.0 |

Inflation Coverage Index:   232.0

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

*Thanks for letting us serve you...*

4226      2011
YY,DR,NP,6H,P3

**Agent** MICHAEL HICKEY INS AGCY INC
**Telephone** (215) 753-1501

REP

*Moving? See your State Farm agent.*
*See reverse for important information.*
Prepared  APR 14 2014

Case ID: 150300614

## CERTIFICATE OF SERVICE

I, Bradley J. Vance, Esquire, hereby certify that a true and correct copy of, Plaintiffs

Complaint was served via United States First Class Mail, postage prepaid, and Electronic Filing

upon the following:

Yolanda Konopacka DeSipio
Bennett Bricklin & Saltzburg LLC
960 Harvest Drive
Building B-Suite 100
Blue Bell, PA 19422
desipio@bbs-law.com


REGER RIZZO & DARNALL LLP

Date: **3·18·15**

By: Bradley J. Vance, Esquire
Attorney I.D.No.58850
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA  19104
(215) 495-6500

Case ID: 150300614

# EXHIBIT "2"

**REGER RIZZO & DARNALL LLP**          Attorney for Plaintiffs
Bradley J. Vance, Esquire
Attorney ID No.58850
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA  19104
(215) 495-6500

*Filed and Attested by
PROTHONOTARY
08 APR 2015 10:34 am
C. FORTE*

| | | |
|---|---|---|
| ERIC GOLD and FERNE GOLD | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiffs, | : | |
| | : | |
| v. | : | MARCH TERM, 2015 |
| | : | NO. 00614 |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY, and | : | |
| STATE FARM FIRE AND CASUALTY | : | |
| COMPANY | | |

## NOTICE TO DEFEND

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in this Complaint or for any other claim or relief required by the Defendant.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**LAWYERS' REFERENCE SERVICE**
**Philadelphia County Bar Association**
**1101 Market Street, #11**
**Philadelphia, PA  19107**
**(215) 238-1701**

Case ID: 150300614

## AVISO

Len han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tien veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abodago y entregar a la corte en forma escritas sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas la corte puede decidir a favor del demandante y requiere que usted cumple con todas las provisiones de esta demanda.  Usted puede perder dinero a sus propiedades u otros derechos importantes pura usted.

LLEVE ESTA DEMANDO A UN ABOGADO INMEDIATAMENTE SI ONCE. NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO.  VAYA EN PERSONA O LLAME PRO TELEFONO A LA OFICINA CUYA DIRECCION ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**SERVICIO DE REFERENCIA LEGAL**
**Philadelphia County Bar Association**
**1101 Market Street, Suite 11**
**Philadelphia, PA   19107**
**(215) 238-1701**

**REGER RIZZO & DARNALL LLP**
Bradley J. Vance, Esquire
Attorney ID No.58850
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA  19104
(215) 495-6500

Attorney for the Plaintiffs

---

| | | |
|---|---|---|
| ERIC GOLD AND FERNE GOLD, h/w | : | COURT OF COMMON PLEAS |
| 505 Ironwood Way | : | |
| Dresher, PA 19015 | : | |
|        Plaintiffs | : | PHILADELPHIA COUNTY |
| | : | |
|     v. | : | MARCH TERM, 2015 |
| | : | NO.  00614 |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE | : | |
| COMPANY, and STATE FARM FIRE | : | |
| AND CASUALTY COMPANY | : | |
| 1 State Farm Plaza | : | |
| Bloomington, Illinois 61710 | : | |
|        Defendants | : | |

## PLAINTIFFS' AMENDED CIVIL ACTION COMPLAINT

### Breach of Contract, Bad Faith, Violation of Unfair Trade Practices and Consumer Protection Law

1.     Plaintiffs are husband and wife residing at all material times at the above-captioned address.

2.     Defendant State Farm Mutual Automobile Insurance Company is an insurance company, corporation or other entity which at all material times issued a policy of homeowners insurance and/or was the corporate owner or parent of an insurance company or other entity which issued a  policy of homeowners insurance to Plaintiffs insuring the residence and items of personal property owned by the Plaintiffs.  A true and accurate copy of the Declarations Page for the policy of homeowners insurance is

Case ID: 150300614

attached hereto as Exhibit "A". At all times material hereto, Defendants conducted business in the Commonwealth of Pennsylvania and specifically within the County of Philadelphia of a systematic and continuing nature, including but not limited to issuance of insurance policies to residents of Philadelphia County, charging and collecting hundreds of millions of dollars from Philadelphia residents for premium payments, advertising for business from Philadelphia residents, and other sales and business activities, all to Defendants' great financial benefit.

3.     Defendant State Farm Fire and Casualty Company is an insurance company, corporation or other entity which at all material times issued a policy of homeowners insurance to Plaintiffs insuring the residence and items of personal property owned by the Plaintiffs. A true and accurate copy of the Declarations Page for the policy of homeowners insurance is attached hereto as Exhibit "A". At all times material hereto, Defendants conducted business in the Commonwealth of Pennsylvania and specifically within the County of Philadelphia of a systematic and continuing nature, including but not limited to issuance of insurance policies to residents of Philadelphia County, charging and collecting hundreds of millions of dollars from Philadelphia residents for premium payments, advertising for business from Philadelphia residents, and other sales and business activities, all to Defendants' great financial benefit.

4.     On March 19, 2013, Plaintiffs were named insureds and/or insureds on the policy of homeowners insurance issued by the Defendants, which policy provided insurance to Plaintiffs for, *inter alia*, the dwelling listed above, personal property of the Plaintiffs, and loss of use, in addition to additional coverages.

5.      At all material times including but not limited to October 29, 2012 and March 19, 2013 to the present, Defendants owed certain contractual duties and obligations to Plaintiffs regarding the insurance coverages contained in the Plaintiffs' homeowners policy.

6.      At all materials times including but not limited to October 29, 2012 and March 19, 2013 to the present, Defendants owed a duty of good faith and fair dealing to the Plaintiffs in handling insurance claims made under Plaintiffs' homeowners policy.

7.      For many years leading up to March 19, 2013 and from that date to the present, Defendants advertised to the general public that they would and do, among other things, handle claims by their insureds in a fair, timely and reasonable fashion as an inducement to have people, including the Plaintiffs, purchase insurance products from State Farm such as Plaintiffs' homeowners policy.

8.      On or about March 19, 2013, when Plaintiffs were insured by Defendants under the homeowners policy, Plaintiffs' residence/dwelling and personal property sustained serious and extensive damage resulting from a fire at the insured location.

9.      Plaintiffs gave immediate notice of the loss to Defendants, specifically by contacting State Farm and/or its agent on March 19, 2013 to notify Defendants of the fire and resultant losses and damages.

10.     Plaintiffs fully complied with Section I – CONDITIONS, Section 2 a. of the homeowners policy.

11.     Defendants dispatched Serv Pro, an emergency services or other company or entity, to the insured location to board up various windows in the residence.

12.     At all times relevant and material hereto, Plaintiffs' homeowners policy contained coverage for "Additional Living Expense" under Coverage C, LOSS OF USE.

13.     Defendants delayed substantially in relocating or assisting the Plaintiffs in relocating to temporary living accommodations after the fire, resulting in various serious and permanent injuries and damages to the Plaintiffs.

14.     Defendants hired, retained or engaged its preferred vendor, ServiceMaster of Bux/mont, to estimate the cost to replace or repair the damages to the insured location that resulted from the fire.

15.     Prior to March 19, 2013, and from that date to the present, Defendants have had a long-standing business relationship with ServiceMaster of Bux/mont.  Upon information and belief, ServiceMaster of Bux/mont was part of Defendant's State Farm Premier Program.

16.     At the specific recommendation and request of Defendants, Plaintiffs agreed to allow ServiceMaster to provide a repair or replacement estimate and perform necessary repairs to the insured location that resulted from the fire and Hurricane Sandy.  Plaintiffs specifically relied upon the advice and recommendations given by Defendants in agreeing to ServiceMaster, and in reliance on Defendants' advice and recommendations, elected not to hire other contractors.

17.     During its investigation of the damage from the fire event, Defendants uncovered and found evidence of substantial damage to Plaintiffs' residence and certain items of personal property resulting from Hurricane Sandy, which occurred on October 29, 2012.

18.     Defendants determined that the damage to Plaintiffs' residence and personal property caused by Hurricane Sandy was substantial, and was separate and distinct from

the substantial damages to Plaintiffs' residence and personal property caused by the March 19, 2013 fire event.

19.     Defendants investigated the fire event and Hurricane Sandy as two separate claims events, each having its own separate coverage amounts for damage to dwelling, damage to personal property and for Loss or Use or Additional Living Expenses under the homeowners policy.

20.     Defendants set up separate and distinct claims for the damage to Plaintiffs' residence and personal property caused by the fire event and Hurricane Sandy.

21.     Both the fire event and Hurricane Sandy trigger and implicate separate, full policy limits under the homeowners policy of insurance.

22.     Both the fire event and Hurricane Sandy are covered perils and losses under the homeowners policy of insurance issued by Defendants to Plaintiffs.

23.     As the direct and factual result of the fire event, Plaintiffs' insured residence sustained significant structural damage including, but specifically not limited to, destruction of the cabana and sunroom necessitating complete demolition and reconstruction, as well as other direct damage and smoke damage throughout the entire home.

24.     As the direct and factual result of Hurricane Sandy, Plaintiffs' insured residence sustained significant structural damage including, but specifically not limited to, destruction of rooms, walls, foundation, improvements and other structural items necessitating complete demolition and reconstruction, as well as other direct damage throughout the entire home.

25.     As the direct and factual result of the fire event and as a direct and factual result of Hurricane Sandy, Plaintiffs' personal property sustained significant direct and smoke or water damage, necessitating replacement and/or cleaning of a significant number of items of personal property.

26.     As a direct and factual result of the fire and/or Hurricane Sandy, Plaintiffs' insured residence was rendered uninhabitable from March 19, 2013, to the present.

27.     As a direct and factual result of the fire and/or Hurricane Sandy, Plaintiffs required relocation to alternative living accommodations from March 19, 2013, to the present.

28.     At all times relevant and material hereto, the locations to which Plaintiffs were relocated by Defendants or otherwise did not approximate or provide Plaintiffs with their customary standard of living.

29.     Due to dilapidated and other conditions that made certain of the accommodations to which Plaintiffs were relocated uninhabitable, Plaintiffs were required to relocate on multiple occasions.

30.     As of February 2014, almost one year after the initial fire event and Defendants identifying damage from Hurricane Sandy, Defendants themselves, or by and through Service Master or other agents of Defendants had failed to complete the investigation of the damages to Plaintiffs' insured residence, including but not limited to failure to provide a written estimate of the damages to Plaintiffs' insured residence.

31.     Defendants' investigation of Plaintiffs' damages to their residence and personal property was not completed by March 19, 2014, and to this date is not complete in that,

*inter alia*, Defendants have never provided final estimates to Plaintiffs for damage to the residence or personal property damages in the fire event and Hurricane Sandy.

32.     The March 19, 2013 fire and Hurricane Sandy causing damage to Plaintiffs' insured residence and personal property was an accidental direct physical loss.

33.     The Fire and Hurricane Sandy are and were at all times relevant and material hereto  insured perils under the homeowners policy issued by Defendants to Plaintiffs.

34.     An initial estimate for the repair and/or replacement costs for damage to Plaintiffs' insured residence was not completed until April, 2014, more than one year after the fire event.

35.     Defendants, through their employee claims adjuster and/or claims supervisor, prepared a second estimate for the repair or replacement costs for Plaintiffs' residence.

36.     Defendants delayed until September, 2014, a time of nearly one and one-half years after the date of the fire event, to provide Plaintiffs with State Farm's estimate for the damages to Plaintiffs' residence.

37.     Defendants have never provided Plaintiffs with a reasonable explanation, or any explanation, for the delay in providing State Farm's estimates for the damage to Plaintiffs' insured residence.

38.     Defendants have never completed final estimates for the damage to Plaintiffs' residence caused by the fire and Hurricane Sandy, nor have Defendants ever provided a reasonable explanation to Plaintiffs for failing to provide final and complete estimates.

39.     Defendants' initial estimate for the damages to Plaintiffs' insured residence was for a total cost or amount that was approximately $100,000 greater than the preliminary estimate provided by Defendants' agent, Service Master.

40.     Because of the complete incompetence of Service Master, the contractor recommended to Plaintiffs by Defendants, Plaintiffs were forced to obtain and retain a new construction contractor.  This was delayed by Defendants' failure to complete and produce the estimate for damages for Plaintiffs' insured residence until September of 2014.

41.     The repair estimate for damage to Plaintiffs' residence caused by the fire produced by Defendants in September, 2014, was for a replacement cost value of $810,729.56.   Thereafter, in October of 2014, Defendants through their employee claims adjuster or claims managers, prepared and provided Plaintiffs with a revised estimate for the damages to Plaintiffs' insured residence, which estimate was inexplicably for an amount that was approximately $55,000 lower than Defendants' initial estimate provided in September 2014.

42.     Defendants never provided any explanation to Plaintiffs for why the revised estimate was written or for why the revised estimate was for an amount less than the original estimate prepared by Defendants.  Defendants have, in fact, never explained either estimate for the repair of damage to the residence from the fire to Plaintiffs.

43.     Upon information and belief, Defendants revised the estimate for the damages to Plaintiffs' insured residence for the sole purpose of reducing the amount of the Plaintiffs' claims, for the sole financial interests of the Defendants.  Through this action, Defendants placed State Farm's own financial interests ahead of those of its isureds, Plaintiffs herein.

44.     Subsequently, Defendants' employee claims adjuster reversed the adjustment that resulted in an estimate that was approximately $55,000 lower than Defendants' original

estimate, again without providing any explanation for either revised estimate and reduction, or the subsequent reversal of the reduction to Plaintiffs.

45.     As of November, 2014, Defendants had failed and refused to pay the Plaintiffs the entire amount required to repair and replace the portions of Plaintiffs' insured dwelling damaged by the fire event and Hurricane Sandy.

46.     Defendants produced to Plaintiffs a fourth estimate for the cost to repair or replace structural damages caused by the fire dated December 3, 2014.  This repair estimate was for a replacement cost value of $866,071.17.   Once again, the change in the amount of this estimate was not explained or justified in any way to the Plaintiffs.

47.     Defendants then prepared yet another estimate for the structural damages from the fire, this time in the amount of $913,237.71.  Once again, the change in the amount of this estimate was not explained or justified in any way to the Plaintiffs.

48.     Despite preparing estimates for structural damage to the Plaintiffs' residence resulting from the fire in amounts ranging between $755,070.63 and $913,237.71, to date Defendants have made payments for the fire damage and claim totaling only $428,121.82.  Defendants have never explained or provided a reason for this to the Plaintiffs.

49.     On or about February 13, 2015, Defendants provided a payment to Plaintiffs for structural damages caused by the fire in the amount of $142,897.62, bringing the total payments made for fire damage to the residence to $428,121.82.  The letter enclosing the payment was dated January 23, 2015, thus evidencing that Defendants delayed in making the payment by three weeks.

Case ID: 150300614

50.    Upon information and belief, Defendants based the above payment on yet another estimate, this estimate bearing a print date of January 26, 2015.  This estimate was for an actual cash value total of $428,121.82.

51.    Consistent with its prior handling and mishandling of Plaintiffs' fire damage claims, and all prior iterations of the damage estimate for the structure, Defendants failed to offer any explanation of any kind as to why and on what basis the damage estimate for structural damages from the fire was reduced by approximately $480,000 from the estimate for precisely the same event and structural damage prepared on December 5, 2014.

52.    Upon information and belief, the reduction in the repair estimate set forth above was done solely and purely for the financial benefit of the Defendants, thereby further evidencing Defendants continued and systematic placement of its own financial interests ahead of those of its insureds, Plaintiffs herein.

53.    Despite having estimated the cost to repair and replace structural damages to Plaintiffs' residence from the fire event at $913,237.71, Defendants have to date paid only $428,121.28 to Plaintiffs.

54.    Plaintiffs are completely and entirely unable to hire competent construction contractors to commence rebuilding their home from the damage caused by the fire and Hurricane Sandy with the monies provided by Defendants.  This, among other actions by the Defendants, has caused and continued to cause Plaintiffs to be displaced from their home for now approaching a period of two years.  Defendants' actions have also caused Plaintiffs' residence to remain in an uninhabitable, unrepaired state, exposed to the

elements, thus causing additional damage to the home and to built-in furnishings in the home.

55.     To date, Defendants have failed and refused to provide Plaintiffs with any reasonable explanation for Defendants' refusal to pay the amount required to repair and replace the damaged portions of Plaintiffs' insured dwelling.

56.     On or about December 11, 2014, Defendants made a payment to Plaintiffs for damage to their insured residence caused by Hurricane Sandy in the amount of $104,844.16.

57.     The "estimate" upon which the above payment was based was generated under the name "ServiceMaster of Bux-Mont", and bears the name "Matt Jandzio". The estimate bears a date of April 1, 2014.

58.     Matt Jandzio had been terminated by ServiceMaster of Bux-Mont long before April 1, 2014.

59.     Defendants fraudulently misrepresented to Plaintiffs that the estimate upon which it based its payment of December 11, 2014 was prepared by Matt Jandzio and ServieMaster of Bux-Mont, with the purpose of inducing Plaintiffs to rely upon the estimate and in reliance on this estimate settle the claim with Defendants for damage to their residence caused by Hurricane Sandy.

60.     In providing a payment to Plaintiffs for structural damages caused by Hurricane Sandy together with the estimate bearing the names Matt Jandzio and Bux-Mont, Defendants made false and misleading statements and misrepresented facts relating to the investigation of the claim for damages from Hurricane Sandy.

61.     Although the estimate on which the payment of $104,844.16 was based was completed on or before April 1, 2014, the payment was not made to Plaintiffs until December 11, 2014.  No explanation has ever been provided to Plaintiffs for the delay in over seven (7) months in making this payment.  Seven (7) months is an entirely unreasonable period of time to make a payment for settlement or partial settlement of a claim.

62.     To date, Defendants have failed and refused to pay the costs to repair or replace Plaintiffs' personal property damaged in the fire event and Hurricane Sandy.

63.     To date, Defendants have failed and refused to provide Plaintiffs with any reasonable explanation for Defendants' refusal to pay the costs to repair or replace Plaintiffs' personal property damaged in the fire event and Hurricane Sandy.

64.     To date, Defendants have failed and refused to conduct a complete and reasonable investigation of the damages to Plaintiffs' insured premises and personal property, without providing Plaintiffs with any reasonable explanation for their failure to do so.

65.     Defendants have repeatedly placed their own financial interests ahead of the financial interests of the Plaintiffs as relate to the fire loss and losses from Hurricane Sandy and Plaintiffs' resultant claims for damage to their insured residence and personal property.

66.     Defendants lack any reasonable basis or justification for refusing and failing to make payments to Plaintiffs under the homeowners policy for damage to Plaintiffs' insured residence and personal property that resulted from the fire event and/or from Hurricane Sandy.

67.     Defendants' actions through its employees and agents in handling and failing to properly handle Plaintiffs' claims have caused Plaintiffs to suffer significant undue financial burdens, anxiety, emotional and physical distress, in addition to denying Plaintiffs the right and ability to enjoy the comforts of their home and personal property, all without reasonable justification, bases and explanation to Plaintiffs.

68.     As the direct and factual result of the acts and omissions of Defendants in, *inter alia*, failing to adequately and reasonably investigate Plaintiffs' covered claims and failure and refusal to pay the amounts required to repair or replace damaged portions of Plaintiffs' insured residence and personal property, Plaintiffs have suffered and continue to suffer additional and increasing financial and other damages and losses, including but not limited to additional damages to the structure of the insured premises, additional damages to personal property items, and additional costs in attempting to protect the residence and store the personal property, all to Plaintiffs' great and continuing financial detriment.

69.     On January 14, 2015, Defendants through their employee claims adjuster requested a fourth inspection of Plaintiffs' insured residence for purposes of rewriting, again, the Defendant's estimate to repair or replace the damaged portions of the insured residence.

70.     Defendants' repeated actions in writing and rewriting repair estimates, and retaining various experts to estimate and address the damages to Plaintiffs' insured premises have caused Defendants to delay and set aside investigation and estimation of the damages to Plaintiffs' personal property caused by the fire event and Hurricane Sandy.

71.     Defendants' repeated actions in writing and rewriting repair estimates, and retaining various experts to estimate and address the damages to Plaintiffs' insured premises have caused Plaintiffs to rely upon Defendants' assurances that the Plaintiffs' claims would ultimately be settled as required in the homeowners policy, and to previously forego commencing action against Defendants.

72.     Defendants have never asserted that they would deny or reduce Plaintiffs' claims if settlement was not accomplished within one year from the fire event or from Hurricane Sandy.

73.     Defendants had not completed the repair estimates for the insured residence or personal property damaged in the fire by the date one year after the fire event.

74.     Defendants have never advised Plaintiffs that any of the claims to damaged portions of the insured residence or personal property were excluded or otherwise limted under any provision of the homeowners policy.

75.     By letter dated April 21, 2014, more than one year after the fire event, Defendant provided an explanation of coverages under Plaintiffs' homeowners policy, for the very first time after the fire.  This letter provides, in part, "No action shall be brought unless there has been compliance with the policy provisions.  The action must be started within one year after the date of loss or damage."  This is the very first writing to Plaintiffs stating this provision.  This letter establishes that Defendants waited over one year from the date of loss (the fire) to advise Plaintiffs that they must commence actions against Defendants for fire-related damages within one year from the date of loss.  The provision has never been explained to Plaintiffs by Defendants.  Defendants have waived the

Case ID: 150300614

provision and are estopped from asserting a contractual limitations period for commencing the within action.

76.     Plaintiffs were led by the actions and statements of Defendants' employees and agents to believe that the provision stated in the October 22, 2014 letter would not be applied by Defendants to restrict or eliminate any claim Plaintiffs have to payment under the homeowners policy for damaged portions of the insured residence or personal property as the result of the fire event and Hurricane Sandy.

COUNT I
BREACH OF CONTRACT
PLAINTIFFS VS. DEFENDANTS

77.     Plaintiffs incorporate herein by reference thereto the averments and allegations contained in paragraphs 1 through 76, inclusive, as though same were set forth at length.

78.     The homeowners policy of insurance issued by Defendants to Plaintiffs is a binding contract which creates duties and obligations owed by Defendants to Plaintiffs for claims made under the policy.

79.     Plaintiffs have fully complied with each and every duty or obligation owed by Plaintiffs under the terms of the insurance contract.

80.     Defendants have failed to comply with various duties and obligations owed by Defendants to Plaintiffs under the contract of insurance.

81.     Defendants' failure to comply with their obligations under the contract of insurance include, but are not limited to, failure to make reasonable and necessary payments to Plaintiffs under Coverage A and Coverage B, failure to comply with the provisions of Coverage C Loss of Use, failure to investigate Plaintiffs' claims fully, reasonably and in a timely fashion, and failure to provide written estimates for the repair

and replacement of damaged portions of Plaintiffs' insured residence and Plaintiffs' personal property.

82.     Defendants have breached the contract of insurance with Plaintiffs, all of which breaches are of a significant, material and ongoing nature.

83.     As a direct, proximate, factual and legal result of the Defendants' breaches of the insurance contract, Plaintiffs have suffered and continue to suffer significant damages and harm, for all of which claim is made herein.

84.     As a direct, proximate, factual and legal result of the Defendants' breaches of the insurance contract, Plaintiffs have suffered and continue to suffer significant damages, including but not limited to inability to replace and repair damaged portions of their home resulting in their inability to live in their home for over two years, loss of personal property and use of personal property, inability to repair or replace damages personal property, significant out of pocket expenses incurred in having to attempt to repair damaged portions of their home with their own money, physical and emotional distress caused by being displaced from their home for over two years and failure of Defendants to reasonably investigate their claims and explain the handling of the claim or insurance coverages.

        WHEREFORE, Plaintiffs Eric and Ferne Gold demand judgment in their favor and against Defendants in an amount in excess of $50,000, plus interest, costs of suit and any and all further remedies as the Court deems adequate and just.

COUNT II
BAD FAITH
PLAINTIFFS VS. DEFENDANTS

85.     Plaintiffs incorporate herein by reference thereto the averments and allegations

contained in paragraphs 1 through 84, inclusive, as though same were set forth at length.

86.     At all times relevant and material hereto, Defendants owed a duty of good faith to

Plaintiffs in investigating and handling their claims under the homeowners policy.

87.     Defendants' conduct through its employees and agents in relation to Plaintiffs'

damages and claims resulting from the fire event and Hurricane Sandy consisted, *inter*

*alia*, of the following:

(a)     misrepresenting provisions and coverages in the homeowners policy,
including but not limited to Coverage A, Coverage B and Coverage C, and the limitations
of action provisions;

(b)     failing to act timely in responding to Plaintiffs' inquiries and concerns
relating to their claims, and the Defendants' investigation of their claims;

(c)     failing to promptly, sufficiently and reasonably investigate Plaintiffs'
claims and damage to their insured premises and personal property, and failure and
refusal to explain this to the Plaintiffs;

(d)     failing and refusing to fully pay Plaintiffs' claims without fully
investigating the claims and without explaining this to the Plaintiffs;

(e)     failing to acknowledge and act in a timely and reasonable manner in
response to communications from and on behalf of the Plaintiffs relating to Plaintiffs'
claims;

(f)     refusing and failing to pay Plaintiffs' claims as the result of failing to
properly, fully and adequately investigate the claims;

(g)     failing to fully pay Plaintiffs' claims despite acknowledging the claims
and that all claims were covered under the homeowners policy;

(h)     failing to effectuate and attempt to effectuate a good faith resolution of
Plaintiffs' claims;

(i)     Failing to act in good faith towards the Plaintiffs in attempting to resolve

Plaintiffs' claims;

(j)     Attempting to settle Plaintiffs' claims at and for amounts that no reasonable person would consider proper and sufficient compensation for Plaintiffs' damages;

(k)     Attempting to settle Plaintiffs' claims without adequate support or justification for the amounts offered to settle the claims;

(l)     Causing substantial and ongoing delay in settling and compensating Plaintiffs' for the damages sustained as the result of the fire event and Hurricane Sandy;

(m)     Causing Plaintiffs to institute litigation through their delay and failure to investigate Plaintiffs' claims;

(n)     Failing to provide full and sufficient written explanation of payments made as partial payment to Plaintiffs for claims resulting from the fire event;

(o)     Failing to provide written updates and explanation to Plaintiffs of the status of the claims and Defendants' investigation of the claims;

(p)     Failing to provide any explanation for Defendants' insufficient and incomplete investigation of Plaintiffs' claims under the terms and coverages contained in the homeowners policy; and

(q)     Acting to deceive the Plaintiffs or otherwise acting deceptively toward the Plaintiffs in handling and attempting to settle portions of the Plaintiffs' claims.

88.     At all times relevant and material hereto Defendants, in their course of dealings with Plaintiffs and investigation and handling of Plaintiffs' claims, placed Defendants' own financial interests ahead of those of the Plaintiffs.

89.     At all times relevant and material hereto Defendants, in their course of dealings with Plaintiffs and investigation and handling of Plaintiffs' claims, breached the duty of good faith and fair dealing Defendants owed to Plaintiffs.

90.     The Plaintiffs' instant Complaint states and concerns an action under a policy of insurance.

91.     Defendants' actions in handling, investigating, failing to investigate, failing to communicate, failing to make reasonable settlement offers and other conduct stated herein constitutes bad faith conduct to their insureds, Plaintiffs herein;

92.     Plaintiffs acted in justifiable reliance on the statements and actions of the Defendants in not commencing litigation prior to the date this Complaint was filed.

93.     Plaintiffs are entitled to recover interest on the amount of the claim, punitive damages, costs and attorney's fees and specifically make claim for all herein, pursuant to the provisions of 42 Pa.C.S.A. §8371.

WHEREFORE, Plaintiffs Eric and Ferne Gold demand judgment in their favor and against Defendants in an amount in excess of $50,000, plus interest, costs of suit, punitive damages, attorney's fees and any and all further remedies as the Court deems adequate and just.

COUNT III
VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW
PLAINTIFFS VS. DEFENDANTS

94.     Plaintiffs incorporate herein by reference thereto the averments and allegations contained in paragraphs 1 through 93, inclusive, as though same were set forth at length.

95.     Defendants' actions as identified herein constitute violations of a systematic and ongoing nature of one or more of the provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1. et seq.

96.     Specifically, through their investigation of, course of handling and adjustment of Plaintiffs' claims, Defendants have engaged in unfair or deceptive trade practices and acts, as defined under the provisions of 73 P.S. §201-2, which provides in pertinent part, as follows:

"UNFAIR METHODS OF COMPETITION" and "UNFAIR OR DECEPTIVE ACTS OR PRACTICES" mean any one or more of the following:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

Case ID: 150300614

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

97.     Defendant's claim handling and conduct related to the investigation and handling of Plaintiffs' claims for damage to their insured residence and personl property caused by the fire and Hurricane Sandy events amount to the unfair and deceptive acts set forth above.

98.     Defendants' conduct and violations of the provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law have caused harm and damages to Plaintiffs as alleged herein, entitling Plaintiffs to all remedies and damages under the Act, including but not limited to treble damages and counsel fees, for all of which claim is made herein.

WHEREFORE, Plaintiffs Eric and Ferne Gold demand judgment in their favor and against Defendants in an amount in excess of $50,000, plus interest, costs of suit, treble damages and attorney's fees,  and any and all further remedies as the Court deems adequate and just.

REGER RIZZO & DARNALL LLP

Date: **4/3/15**          By: _____

Bradley J. Vance, Esquire
PA ID No. 58660
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA  19104
(215) 495-6500
Attorney for Defendant,

Case ID: 150300614

# V E R I F I C A T I O N

     Plaintiff verifies that the statements made in this pleading are true and correct to the best of plaintiff's knowledge, information and belief. To the extent that the pleading contains averments of law and language of counsel and results of investigation, plaintiff has relied on counsel.

     Plaintiff understands that the statements therein are made subject to the penalties of 18 Pa.C.S.A. Section §4904 relating to unsworn falsification to authorities.

Date: 3|17|15        By: _____

                         Eric Gold

# EXHIBIT "A"

Case ID: 150300614



**State Farm Fire and Casualty Company**
100 State Farm Place
Ballston Spa, NY 12020-8000

# RENEWAL CERTIFICATE

POLICY NUMBER    78-BM-Q758-5

Homeowners Policy
JUN 04 2014 to JUN 04 2015

SEE BALANCE DUE FOR RENEWAL OFFER

BILLED THROUGH SFPP

E-13- 6121-FBAE    H  W  F

001842  0001
GOLD, ERIC & FERNE
505 IRONWOOD WAY
DRESHER PA  19025~1411



ST-1
0203-001

## Coverages and Limits

### Section I

| | | | |
|---|---|---|---|
| A | Dwelling | | $868,900 |
| | Dwelling Extension | Up To | 86,890 |
| B | Personal Property | | 651,675 |
| C | Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**
All Losses  1/2%                                    4,344

### Section II

| | | | |
|---|---|---|---|
| L | Personal Liability | | $300,000 |
| | Damage to Property of Others | | 500 |
| M | Medical Payments to Others (Each Person) | | 1,000 |

Location:   Same as Mailing Address

SFPP No: 1074575413

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Annual Premium**                              $2,086.00

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $173,780 | OPT  ID |
| Ordinance/Law  10%/  $86,890 | OPT  OL |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Homeowners Policy Endorsement | FE-3518 |

**Premium Reductions**

| | |
|---|---|
| Home Alert Discount | 207.0 |
| Home/Auto Discount | 1,116.0 |
| Claim Record Discount | 519.0 |

Inflation Coverage Index:   232.0

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

*Thanks for letting us serve you...*

4226        2011  I
  YY,DR,NP,6H,P3

**Agent**  MICHAEL HICKEY INS AGCY INC
**Telephone** (215) 753-1501

REP

*Moving? See your State Farm agent.*
*See reverse for important information.*
Prepared APR 14 2014

Case ID: 150300614

## CERTIFICATE OF SERVICE

I, Bradley J. Vance, hereby certify that a true and correct copy of Plaintiffs Amended Civil Action Complaint was served via Electronic Mail and United States First Class Mail, postage prepaid, upon the following:

Yolanda Konopacka DeSipio, Esquire<br>
Bennett Bricklin & Saltzburg LLC<br>
960 Harvest Drive<br>
Building B-Suite 100<br>
Blue Bell, PA 19422

BY: _____

      Bradley J. Vance, Esquire
      Attorney for Plaintiffs
      Attorney ID No. 59850
      Cira Centre, 13th Floor
      2929 Arch Street
      Philadelphia, PA 19104
      (215) 495-6500

15-186
**REGER RIZZO & DARNALL LLP**
Bradley J. Vance, Esquire
Attorney ID No.58850
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 495-6500

Attorney for Plaintiffs

*Filed and Attested by
PROTHONOTARY
02 APR 2015 03:50 pm
J. OSTROWSKI*

| | |
|---|---|
| ERIC GOLD and FERNE GOLD | : COURT OF COMMON PLEAS |
| | : PHILADELPHIA COUNTY |
| Plaintiffs, | : |
| | : |
| v. | : MARCH TERM, 2015 |
| | : NO. 00614 |
| STATE FARM MUTUAL AUTOMOBILE | : |
| INSURANCE COMPANY, and | : |
| STATE FARM FIRE AND CASUALTY | : |
| COMPANY | : |

## STIPULATION OF PARTIES TO PERMIT PLAINTIFFS TO FILE AN AMENDED COMPLAINT IN THE FORM ATTACHED

It is hereby stipulated by the undersigned, counsel for the Plaintiffs and

Defendants, that the Plaintiffs are permitted to file an Amended Civil Action Complaint,

in the form attached hereto. The amendment is to paragraph 87 of the Complaint.

By: _____
Bradley J. Vance, Esquire
Attorney for Plaintiffs

By: _____
Yolanda Despio, Esquire
Attorney for Defendants

Case ID: 150300614